# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JEFFREY L. CLEMENS, | ) |
| Plaintiff, | ) |
| v. | ) Civil No. <br> ) 13-11598-FDS |
| TOWN OF SCITUATE, SHELLY LAVERONI, JERRY LAVERONI, RALPH I. SOZIO, MICHAEL O'HARA, JOHN C. ROONEY, TIMOTHY GOYETTE, JEANETTE M. LANGLOIS, STEPHEN C. PFAFF, RONALD F. MOYNAHAN, RICHARD LINEHAN, DANIEL S. MORRISON, and TRIDENT INSURANCE SERVICES AGENCY OF NEW ENGLAND, INC., | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER ON MOTIONS TO DISMISS, MOTIONS TO AMEND, AND MOTION TO ENJOIN FURTHER *PRO SE* COMPLAINTS**

**SAYLOR, J.**

This is a dispute arising out of an allegedly unlawful arrest and prosecution. In 2005, plaintiff Jeffrey Clemens was charged with disorderly conduct, harassment, and impersonating a private investigator. He was convicted of the disorderly conduct charge and pleaded to sufficient facts on the impersonation charge, which was continued without a finding. He has now brought this lawsuit, his third, arising out of his arrest and prosecution for disorderly conduct, alleging claims against thirteen defendants. He is proceeding *pro se*.

Several defendants have moved to dismiss the complaint, contending, among other things, that plaintiff is barred from pursuing this case by the doctrine of *res judicata*. Defendant

Stephen Pfaff has also moved to enjoin plaintiff from filing further complaints without leave when proceeding *pro se*.[1]

For the following reasons, the motions will be granted.

## I. Background

The following facts are set forth in the complaint or court documents from related cases.[2]

### A. Clemens's State Criminal Case and First Civil Lawsuit

On May 12, 2005, Jeffrey Clemens visited the home of Shelly Laveroni in Scituate, Massachusetts, to ask her questions regarding a lawsuit he had filed in California. Laveroni asked him to leave and called the police. After Clemens left, Michael O'Hara, an officer of the Scituate Police Department, pulled him over. After an altercation between the two, Clemens was arrested and charged with disorderly conduct. He was also later charged with harassment and impersonation of a private investigator.

On May 3, 2007, Clemens, proceeding *pro se*, filed a complaint in this Court. *Clemens v. Town of Scituate et al.*, 07-10845-RGS ("*Clemens I*"). The complaint alleged claims of false arrest, false imprisonment, abuse of process, reckless endangerment, intentional infliction of emotional distress, and federal civil rights violations. *Clemens I*, 2009 WL 1448807, at *2 (D. Mass. May 22, 2009). The claims were based on his arrest and prosecution in Scituate.

On September 18, 2008, a state-court jury convicted Clemens of disorderly conduct. The Commonwealth subsequently dismissed the harassment charge. On December 11, 2008,

---

[1] The Town of Scitutate has also moved to enjoin plaintiff from filing further complaints. The Town's motion is duplicative of Pfaff's.

[2] On a motion to dismiss, courts can consider official public records without converting the motion into one for summary judgment. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

Clemens pleaded to sufficient facts to admit guilt to the charge of impersonating a private investigator, and the charge was continued without a finding.

On March 4, 2009, the court in *Clemens I* denied a motion for recusal. The motion itself does not appear on the docket, but it appears that it was made on the grounds that the presiding judge, Judge Richard Stearns, had ties to one of the federal judges presiding over one of Clemens's California cases, Judge Dickran Tevrizian, through the Armenian community. In denying the motion, the court wrote:

> The motion is <u>DENIED</u>. As a native of Fresno who has twice visited Armenia in an official capacity, I admit to great affection for Armenian history and culture. I regret, however, that I do not know Judge Tevrizian. Nor am I formally affiliated with any Armenian organization.

(Order on Mot. to Recuse, Docket No. 33, Ex. 3).

On May 26, 2009, the court in *Clemens I* granted summary judgment for the defendants. *Clemens I*, 2009 WL 1448807, at *2-3. The court found that Clemens's claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), which prohibits a person with a criminal conviction from bringing a civil suit where "a judgment in favor of the plaintiff in the civil case would necessarily imply the invalidity of his conviction or sentence." *Clemens I*, 2009 WL 1448807, at *2 (quoting *Heck*, 512 U.S. at 487) (internal alterations omitted).

On July 18, 2009, Clemens sent a letter to Judge Stearns.[3] In that letter, he stated he had concerns because the judge had "been roommates with Bill Clinton at Oxford University some years ago." (July 18, 2009 Letter from Clemens to Judge Stearns, Docket No. 32, Ex. 2). Clemens alleged that two of the defendants in *Clemens I* had ties to the Hotel Regency in New

---

[3] The letter appears to urge Judge Stearns to grant Clemens's motion for reconsideration of the summary judgment decision, which the court had already denied on June 12, 2009.

York, and that the New York Yankees and the investment bank Lazard Freres leased numerous suites in the Hotel Regency. He further alleged that Clinton had deep ties to Lazard. He therefore had "concerns as for an appearance of impropriety," which he said could be alleviated if Judge Stearns assured him that the judge's "relationship [with Clinton] did not in any way affect the instant proceedings." (*Id.*).

### B. Clemens's Second Civil Lawsuit

On October 27, 2009, Clemens, again proceeding *pro se*, filed another complaint in *Clemens v. Town of Scituate et al.*, 09-11821-WGY ("*Clemens II*"). The named defendants in *Clemens II* included, among others, the Town of Scituate, Shelly Laveroni, Jerry Laveroni, Ralph Sozio, Michael O'Hara, John Rooney, Timothy Goyette, Jeanette Langlois, Stephen Pfaff, Ronald Moynahan, Richard Linehan, Daniel Morrison, and Trident Insurance Services Agency of New England, Inc. The *Clemens II* complaint alleged that Clemens's state criminal prosecution was brought to harass him by a wide-ranging conspiracy including residents of the Town of Scituate, members of the entertainment industry in California, and the New York Yankees. It alleged claims of a malicious prosecution and negligence.

*Clemens II* was initially assigned to Judge Stearns. On November 19, 2009, Clemens moved to disqualify Judge Stearns, alleging that the judge (1) went to the same high school in Fresno, California, as Jerry Laveroni; (2) had ties to Jerry Laveroni through the Hotel Regency in New York; and (3) had ties to Judge Tevrizian through the Armenian community. (*Clemens I*, Mot. to Disqualify, Docket No. 6). Judge Stearns granted the motion without opinion on December 7, 2009. The case was randomly reassigned to Judge William Young.

On March 8, 2010, Clemens sent an e-mail to Stephen Pfaff. The e-mail, described by

4

the *Clemens II* court as "a shockingly abusive and threatening e-mail," contained a series of threatening remarks. (*Clemens II*, Order to Show Cause, Docket No. 30). For example, the e-mail stated:

> Have you ever been punched in the face? Well, I was, at PCCH, thanks to O'Hara and Moynahan and now, frankly, I rather hope you experience that same thrill someday, figuratively or otherwise, maybe even see one of your "clients" go to prison, you get disbarred, "taken to a chop shop on Staten Island", whatever.
>
> . . .
>
> I am very much looking forward to putting you in your place, Mr. Pfaff. You disgust me. You are absolute filth [proof positive that a suit and tie ultimately doesn't not make a person "good" or "respectable"]. Yeah, remember Stearns and the whole Laveroni default? Sure you do. And surely, you will pay the price some day for the many years of incarcerations I had to endure BECAUSE OF YOU Mr. Hired in 2007 Over A Year Before The 2008 Trial That Gave You Summary Judgment Pfaff.
>
> Oh, how I wish a 10-ton I-beam would fall on you, O'Hara, Rooney and Shelly right now. Splat! Boy, would I love to see that!
>
> . . .
>
> From now on, be sure and watch your backside, Mr. Pfaff. God may step up to the plate at any moment. I dunno, I got this feeling someone's going to get hurt REAL BAD. And it ain't gonna be me.

(March 8, 2010, E-mail from Clemens to Pfaff, Docket No. 32, Ex. 1 (brackets in original)).

> The e-mail also made statements about the Judge Young:
>
> The judge to whom you just mentioned, William G. Young, by the way [perhaps you knew already], graduated Harvard Law with Alana Alexander, long and dear friend and associate to Ronald Bass, credited author of the movie Rain Man which you took it upon yourself to refer to in your recent motion before him [Young]. Only thing is, Mr. Bass went to Harvard Law School, too, and graduated but one year before Mr. Young.
>
> Gee, do you suppose they knew each other? Exchanged notes? Took Civil Procedure together?

(*Id.* (brackets in original)). On March 9, the *Clemens II* court ordered Clemens to show cause as

to why the case should not be dismissed with prejudice "for abuse of the civil justice system." (*Clemens II*, Order to Show Cause).

On April 2, 2010, after a hearing, the *Clemens II* court dismissed the case with prejudice pursuant to Fed. R. Civ. P. 41(b) "due to plaintiff's abuse of litigation process through his scurrilous and threatening communications." (*Clemens II*, Order of Dismissal, Docket No. 63). The case was dismissed on the grounds that Clemens had abused the judicial process by sending a threatening letter to one of the defense lawyers in the case. On November 10, the First Circuit affirmed the dismissal.

        C.        **Clemens's Federal Criminal Case and Lawsuit against the U.S. Marshals**

On April 14, 2010, Clemens was charged with two counts of making a threat to injure through interstate commerce for sending the threatening e-mail in *Clemens II*.[4] The case was assigned to Judge Douglas Woodlock. On May 11, 2011, a federal jury convicted Clemens on both counts. The First Circuit affirmed his conviction on December 10, 2013. *United States v. Clemens*, 738 F.3d 1, 14 (1st Cir. 2013). During the pendency of the appeal, Clemens wrote a letter to Judge Woodlock seeking a video recording of his sentencing hearing on January 13, 2012. During that hearing, an altercation occurred between Clemens and members of the United States Marshals Service. Clemens made several statements directly to Judge Woodlock in his letter:

> That is, three strikes and <u>you're</u> out. This is <u>not</u> an idle "threat". If the video in question comes to be destroyed, the House Judiciary Committee (and others) will come to know of everything I have come to know and observe relevant to your conduct in and about my prosecution. For you to allow persons to assault a defendant in plain sight, in your presence (to include earshot), and you <u>twice</u> looked the other way (turned a deaf ear),

---

[4] Clemens had sent the e-mail to two different individuals.

6

> means it is time for you to retire (to put it nicely).
>
> . . .
>
> Do be reminded of one thing. Judge Tevrizian (who, to this day, I do not feel that I threatened) never saw "Senior Status" (and you are welcome to inquire why) nor, in all likelihood, shall you if you do not explain yourself and tow the line from here on out. Matters, by all appearances, are far from over. And you, by the manner in which you allowed my prosecution to proceed, have only yourself to thank for that.

(July 4, 2013, Letter from Clemens to Judge Woodlock, Docket No. 32, Ex. 6 at 2-3 (emphases in original)).

On December 2, 2013, Clemens filed the complaint in *Clemens v. United States Marshals Service*, 13-13084-WGY ("*USMS*"). He brought the case *pro se*, and it was assigned to Judge Young. The complaint in that case alleged that Clemens was assaulted by members of the USMS during the sentencing hearing on January 13, 2012. On February 18, 2014, Clemens filed a motion to disqualify Judge Young, alleging that Judge Young was biased against him and had ties to defendants in his California cases. (*USMS*, Mot. to Disqualify, Docket No. 15). On February 21, the complaint in *USMS* was dismissed for failure to comply with the requirements of Rule 8 and failure to state a claim that could be brought against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-80.

On March 10, 2014, Clemens filed a motion for Chief Judge Saris to reassign the case to a different judge and strike Judge Young's order of dismissal. On April 21, he appealed. The motion to reassign and the appeal remain pending as of the date of this opinion.

### D.     Clemens's Third Civil Lawsuit

On July 8, 2010, the Massachusetts Appeals Court reversed Clemens's conviction for disorderly conduct, holding that he had not knowingly waived his right to counsel when

7

proceeding *pro se* in his state criminal trial. *Commonwealth v. Clemens*, 77 Mass. App. Ct. 232, 353-54 (2010). The disorderly conduct charge remains pending as of the date of this opinion.

Clemens filed the complaint in this case on July 8, 2013 (*Clemens III*). In sum, the complaint alleges that Clemens's prosecution for disorderly conduct was part of a wide-ranging conspiracy against him between individuals in the entertainment industry in California, residents of the Town of Scituate, individuals associated with the New York Yankees, and employees of various state and federal law enforcement offices. The complaint alleges one count of malicious prosecution against thirteen defendants, all of whom were named as defendants in *Clemens II*.

On April 1, 2014, Clemens moved to amend the complaint to add several federal civil rights claims based on his malicious prosecution claims.[5] Defendants Morrison, Trident, Scituate, and Pfaff have all moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). They contend, among other things, that the claims in the complaint are barred by the doctrine of res judicata.[6] Pfaff has also moved to enjoin further *pro se* complaints by Clemens under the Court's inherent authority. Clemens has moved to strike the motion to enjoin, contending that it was brought as a harassment tactic.

## II. <u>Standard of Review</u>

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.

---

[5] He has also moved to amend the complaint to add various factual allegations.

[6] Clemens has also moved for a default judgment against the Town of Scituate and Pfaff. Those defendants contend they were not served properly under Rule 4. Because those defendants have appeared and the Court is resolving this case on the merits, the motion for default judgment will be denied.

1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

## III. Analysis

### A. Motions to Dismiss

Defendants contend that plaintiff's malicious prosecution claims are precluded by the dismissal of his claims in *Clemens II*. The doctrine of claim preclusion, or *res judicata*, prohibits parties from contesting issues that they have had a "full and fair opportunity to litigate." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Application of *res judicata* requires three elements: "(1) the earlier suit resulted in a final judgment on the merits, (2) the causes of action asserted in the earlier and later suits are sufficiently identical or related, and (3) the parties in the two suits are sufficiently identical or closely related." *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 14 (1st Cir. 2010).[7]

The dismissal in *Clemens II* satisfies all three elements of that test. First, *Clemens II* was dismissed pursuant to Rule 41(b). That rule states that "[u]nless the dismissal order states

---

[7] Defendants contend that Massachusetts law governs the issue of claim preclusion in this case. Because *Clemens II* was a federal case, federal claim preclusion law applies. *Airframe Sys.*, 601 F.3d at 14.

9

otherwise, a dismissal under this subdivision[,] . . . except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19[,] operates as an adjudication on the merits." The *Clemens II* dismissal order stated, "This action is dismissed with prejudice due to the plaintiff's abuse of litigation process through his scurrilous and threatening communications." (*Clemens II*, Order of Dismissal). Under the plain language of Rule 41(b), that dismissal was a final judgment on the merits once it was affirmed by the First Circuit.

Second, the causes of action in *Clemens II* are identical to those in this case. Causes of action are sufficiently related when they "arise out of a common nucleus of operative facts." *Airframe Sys.*, 601 F.3d at 15 (quoting *Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 38 (1st Cir. 1998)). The complaint in *Clemens II* alleges, among others, claims of malicious prosecution arising out of plaintiff's state prosecution for disorderly conduct. The complaint in this case also alleges claims of malicious prosecution arising out of that same prosecution for disorderly conduct. The claims are therefore identical for the purposes of claim preclusion.

Finally, the defendants in this case were all defendants in *Clemens II*. The dismissal in that case therefore precludes the malicious prosecution claims in this case.

Plaintiff contends that because his conviction for disorderly conduct was not overturned until July 8, 2010, his malicious prosecution claims were not ripe. He contends that because those claims were not ripe they are not now precluded.[8]

---

[8] To state a claim of malicious prosecution in Massachusetts, a plaintiff must allege "(1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendants; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice." *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001) (citing *Correllas v. Viveiros*, 410 Mass. 314, 318 (1991)). The complaint fails to state a claim for malicious prosecution because it does not allege a termination of plaintiff's disorderly conduct charge in his favor. The Court could dismiss the complaint on that basis as well.

It is true that "res judicata will not attach if the claim asserted in the second suit could not have been asserted in the first." *American Cyanmid Co. v. Capuano*, 381 F.3d 6, 17 (1st Cir. 2004) (internal quotation and alteration omitted). However, plaintiff chose to bring malicious prosecution claims in *Clemens II*, and they were dismissed. Even if those claims were not ripe, they were not dismissed on ripeness grounds. The dismissal was a final adjudication on the merits with preclusive effect.

Accordingly defendants' motions to dismiss will be granted.[9]

B.      **Motion to Enjoin**

Defendants Town of Scituate and Pfaff have also moved to enjoin plaintiff from filing further *pro se* complaints without leave. "A district court has the power to enjoin litigants who abuse the court system by filing groundless and vexatious litigation." *Stefanik v. Town of Huntington*, 536 F. Supp. 2d 106, 114 (D. Mass. 2008) (citing *Elbery v. Louison*, 201 F.3d 427, 1999 WL 1295871, at *2 (1st Cir. 1999) (*per curiam*) (table decision)); *see also* 28 U.S.C. § 1651 (courts may issue all writs necessary or appropriate in aid of their respective jurisdictions). "Vexatious conduct occurs where a party's actions are 'frivolous, unreasonable, or without foundation' even without the presence of 'subjective bad faith.'" *Azbuko v. MBNA America Bank*, 398 F. Supp. 2d 1, 7 (D. Mass. 2005) (quoting *Local 285, Serv. Employees Int'l Union, AFL-CIO v. Nonotuck Res. Associates, Inc.*, 64 F.3d 735, 737 (1st Cir. 1995)). "A federal court's ability to restrict a litigant's access to the courts by issuing an injunction prohibiting any

---

[9] Plaintiff has moved to amend the complaint to add federal civil rights claims under 42 U.S.C. §§ 1983 and 1985. Under Fed. R. Civ. P. 15(a)(2), motions for leave to amend should be freely granted "unless the amendment would be futile or reward undue delay." *Abraham v. Woods Hole Oceanographic Inst.*, 553 F.3d 114, 177 (1st Cir. 2009). Amending the complaint to add plaintiff's proposed civil rights claims would be futile because the claims arise out of the same nucleus of operative facts as his malicious prosecution claims, and are therefore precluded by *Clemens II*. Accordingly, his motion to amend will be denied.

further filing . . . can only be justified in extreme circumstances involving groundless encroachment upon the limited time and resources of the court and other parties." *Otis Elevator Co. v. International Union of Elevator Constructors, Local 4*, 408 F.3d 1, 10 (1st Cir. 2005) (internal quotations omitted). However, "litigiousness alone will not support an injunction against a plaintiff." *Id.* (quoting *Pavilonis v. King*, 626 F.2d 1075, 1079 (1st Cir. 1980)).

Courts in this circuit have repeatedly found that a plaintiff who files multiple frivolous and vexatious lawsuits arising out of the same or similar events can be enjoined from filing further lawsuits without leave. *See Hart v. United States*, 1994 WL 89442, at *1 (1st. Cir. Mar. 22, 1994) (upholding district court order enjoining *pro se* litigant from filing any motions, pleadings, or papers without prior leave of the court for deluging the court with sixty-six motions); *Castro v. United States*, 775 F.2d 399, 410 (1st Cir. 1985) *abrogated on other grounds by Stevens v. Department of Treasury*, 500 U.S. 1 (1991) (upholding injunction against plaintiff for filing frivolous and vexatious lawsuits and repeatedly litigating the same or similar issues); *Pavilonis*, 626 F.2d at 1079 (upholding district court order enjoining defendant from filing further cases for filing multiple complaints, all with the same deficiencies); *Stefanik*, 536 F. Supp. 2d at 114 (enjoining plaintiff for repeated filings of factually and legally deficient complaints, reliance on wholly irrelevant material, and calculated misrepresentation of key facts); *Jones v. Social Security Admin.*, 2004 WL 2915290, at *4-5 (D. Mass. Dec. 14, 2004) *aff'd* 150 Fed. App'x 1 (1st Cir. 2005) (enjoining defendant from further filings for filing four complaints with identical claims against the same defendants and obtaining summonses by falsely claiming he had been allowed to proceed *in forma pauperis*).

This is not a case of mere litigiousness. Plaintiff has filed three complaints in this

district, all arising from the same set of facts. The *Clemens I* court granted summary judgment against plaintiff. The *Clemens II* court dismissed the case because plaintiff sent a scurrilous and threatening e-mail to defendant Pfaff, for which plaintiff was prosecuted and convicted. The claims in this case are both barred by *res judicata* and deficient as pleaded. Plaintiff has also filed a complaint against the United States Marshals Service, which was dismissed for failing to comply with Rule 8.

Plaintiff has also attacked, in writing, the character of the three judges in this district that have presided over his cases, and moved to disqualify two of them multiple times on frivolous grounds. His frivolous lawsuits have unnecessarily burdened defendants and the court system. Sanctions are appropriate under these circumstances.

The Court is mindful of the First Circuit's guidance when imposing a sanction:

> In general, a trial court confronted by sanctionable behavior should consider the purpose to be achieved by a given sanction and then craft a sanction adequate to serve that purpose. . . . [T]he judge should take pains neither to use an elephant gun to slay a mouse nor to wield a cardboard sword if a dragon looms. Whether deterrence or compensation is the goal, the punishment should be reasonably suited to the crime.

*Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 395 (1st Cir. 1990).

The repeated filing of deficient complaints against the defendants in this case is an abuse of the processes of this Court. The most effective way of limiting that abuse is an order enjoining plaintiff from filing further *pro se* complaints without leave. Accordingly, defendant Pfaff's motion to enjoin will be granted.[10]

---

[10] Plaintiff has moved to strike the motion to enjoin, contending that it was brought to harass him. Under Rule 12, a court "may strike from a pleading any . . . redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Because the Court grants the motion to enjoin, the motion to strike will be denied.

## IV.     Conclusion

For the foregoing reasons:

1.  The motions to dismiss by defendants Daniel Morrison and Trident (Docket No. 8), the Town of Scituate (Docket No. 21), and Stephen Pfaff (Docket No. 24) are GRANTED.

2.  Plaintiff's motions to amend (Docket Nos. 6, 27) are DENIED.

3.  Defendant Pfaff's motion to enjoin further *pro se* complaints (Docket No. 31) is GRANTED.

4.  Plaintiff Clemens's motion to strike the motion to enjoin (Docket No. 40) is DENIED.

5.  Plaintiff Jeffrey Clemens is hereby enjoined from filing further lawsuits in this Court without leave of court. If Clemens seeks to file any additional papers in this Court, except filings in currently pending actions or to effect an appeal from this order, he must file a written petition seeking leave to do so. The petition must contain a copy of this Order, together with the papers sought to be filed, and a certification under oath that there is a good-faith basis for the filing. The Clerk of Court shall accept the documents, mark them received, and forward them, for action on the petition to a judge of this Court authorized to act on matters on the Miscellaneous Business Docket of the Court. A copy of this Order shall be distributed to the Clerk of Court and to the session of each District Judge.

Plaintiff is specifically instructed that any failure to comply with these requirements may result in additional sanctions, including monetary fines and punishment for contempt of court.

**So Ordered.**

                                                                                           /s/ F. Dennis Saylor
                                                                                           F. Dennis Saylor IV
Dated: June 16, 2014                              United States District Judge